RECEIVED

MAR 0 7 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

UNITED STATES OF AMERICA — CRIMINAL NO. 06-60007/01 & 02

VS. — JUDGE DOHERTY

RUSTY ROSS HONORE (01)
PEYTON EARLY KNATT (02) — MAGISTRATE JUDGE METHVIN

# REPORT AND RECOMMENDATION

***(Rec. Docs. 151 & 153)***

Before the court are almost identical motions to suppress filed by defendants Rusty Ross Honore and Peyton Earl Knatt ("defendants") on January 29 and January 31, 2007, respectively.[1] The government opposes the motions.[2] For the following reasons, it is recommended that the motions be **DENIED.**

## Issues Presented

Defendants were indicted on February 15, 2007 on multiple drug charges, including manufacture of cocaine base, possession with intent to distribute cocaine base, and possession with intent to distribute marijuana. Movers assert that the affidavit in support of an application for the placement of listening devices in their apartment contained false and/or "confusing" information, and that the evidence obtained as a result of the placement of those listening devices should therefore be suppressed.

---

[1] See Rec. Doc. 151 (Ross's motion to suppress) and Rec. Doc. 153 (Knatt's motion to suppress).

[2] Rec. Doc. 156.

*Findings and Conclusion*

**1. Application for the Placement of Listening Devices**

In April 2005, after a one-year of investigation of the defendants named herein and other unnamed individuals, Special Agent Erol Catalan of the United States Immigration and Customs Enforcement ("ICE") applied for an order authorizing the interception of oral communications by means of eavesdropping devices (microphones) in the kitchen area and garage of Apartment 606 located at 6000 Johnston Street, Lafayette, Louisiana, which is leased to defendants Honore and Knatt.

In support of his application, Agent Catalan submitted an eighteen-page affidavit to Judge Tucker L. Melançon that sets forth evidence supporting his contention that there was probable cause to believe that four named interceptees – Honore and Knatt, and Eric Alexander and Rodney Gatlin, two individuals who are not named in the instant indictment – and others as yet unknown, were committing federal felony drug offenses. The evidence contained in Agent Catalan's affidavit included the fact that several drug sources were arrested on their way to delivering illegal drugs to Apartment 606, which is leased to the defendants herein, and to Apartment 710, which is leased to Eric Alexander. The affidavit also stated that "trash intercepts," in which law enforcement personnel seized and evaluated the contents of trash containers for Apartment 606, revealed the presence of illegal drugs and drug paraphrenalia.

Pursuant to 28 U.S.C. §2518(1)(c), the affidavit also sets forth the alternative investigative techniques utilized by law enforcement investigating the case, including physical surveillance of Apartment 606; the use of confidential informants and undercover agents; the execution of search warrants; and attempts to trace telephone calls. Agent Catalan stated in his

affidavit that although the foregoing investigative techniques had been somewhat effective, the placement of listening devices in the kitchen and garage areas of Apartment 606 was the most reliable method by which to obtain evidence of illegal drug activity.

U.S. District Judge Tucker L. Melançon granted Agent Catalan's application for the placement of the listening device in Apartment 606 on April 13, 2005.

Movers allege that all evidence seized as a result of the placement of the listening device in Apartment 606 was illegally obtained in violation of their right to privacy, inasmuch as the affidavit in support of the application for the listening devices lacks probable cause of illegal activity on the parts of the defendants, to wit:

> The affidavit indicated that the cooperating sources had performed illegal transactions at apartment 710, or the residence of Eric Alexander. No information was obtained from cooperating sources identifying PEYTON KNATT or RUSTY HONORE as individuals involved in the transactions. No cooperating sources specifically identified apartment 606 as a delivery or purchase point for illegal drugs or money. No cooperating source even admitted to meeting or knowing PEYTON KNATT or RUSTY HONORE.

Movers allege that the affidavit is misleading, because it leads one to believe that the majority of drug activity was taking place in the apartment leased by Eric Alexander – Apartment 710 – and not Apartment 606, the apartment leased to Honore and Knatt – where the listening device was actually placed. Defendants contend that none of the drug sources who were arrested en route to their destinations identified either Honore or Knatt as the individuals to whom they were delivering the drugs, and that none of the drug sources identified Apartment 606 as the apartment to which they were delivering drugs. Rather, defendants contend that the drug sources overwhelmingly identified Eric Alexander as the individual to whom they were delivering drugs, and that there was, therefore, no probable cause to place the listening device in Apartment 606.

**2. Applicable Law**

Applications for the placement of listening devices, most commonly referred to as "wiretaps," are treated in the same manner as applications for search warrants for purposes of determining whether they are properly supported. Generally, a search warrant or wiretap may be issued only if there is probable cause to believe that evidence of criminal activity will be found on the premises or person searched. U.S. CONST. amend. IV ("... no Warrants shall issue, but upon probable cause, ..."); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed.2d 543 (1925). To obtain a warrant, law enforcement officers must submit an affidavit to a neutral and detached magistrate which contains sufficient facts and circumstances to enable an independent finding of probable cause of evidence of a crime. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

In determining whether p

robable cause exists, a neutral magistrate must consider the facts and circumstances presented in the warrant application in a practical, common-sense manner, and make an independent assessment regarding probable cause. Aguilar v. Texas, 378 U.S. 108, 109, 111-13 (1964), Illinois v. Gates, 462 U.S. 213, 238 (1983). The magistrate must consider the "totality of the circumstances" in making this finding, and a magistrate's determination of probable cause should be paid great deference by reviewing courts. Gates, 462 U.S. at 235 (citing Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969)) ("... we have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review.")

Movers contend that the court should hold an evidentiary hearing to determine the

validity of Agent Catalan's affidavit supporting his application for the placement of listening devices. In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court held that, "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." 438 U.S. at 155-56. If the defendant establishes the allegation of perjury or reckless disregard by a preponderance of the evidence, and the affidavit's remaining content is insufficient to establish probable cause, then "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." Id.

A presumption of validity attaches to affidavits supporting search warrants. Id., 438 U.S. at 171-72, 98 S.Ct. at 2684-85. An evidentiary hearing on the issue of whether a particular affidavit contains false or reckless statements is mandated only when the challenger's attack is specific, is aimed at the affiant, and is supported by an offer of proof in the form of affidavits or other reliable statements. The allegations "must be more than conclusory and must be supported by more than a mere desire to cross-examine." Id.

> There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.

Franks, 438 U.S. at 171 (footnotes omitted).

Furthermore, no evidentiary hearing is required if the warrant affidavit contains sufficient content to support a finding of probable cause without consideration of the alleged false statements. Id.

After review of the briefs, the affidavit, and the applicable law, the undersigned concludes that movers have failed to make the necessary "substantial preliminary showing" required for a Franks hearing. Indeed, defendants concede that they have no offer of proof at this time, although they seek an extension of time to gather proof.[3]

Furthermore, reading the affidavit as a whole, and according it the necessary presumption of validity, it is clear that probable cause existed for the placement of the listening devices in Apartment 606. Among other things, the affidavit included the following non-challenged assertions:

- Source Isabel Cordova was arrested with 118 lbs. of marijuana en route to delivering her drugs to an apartment whose code number was 5009, which was assigned to Apartment 606, leased by defendants.

- Trash intercepts in connection with the trash container for Apartment 606 were conducted on December 7, 2004, December 14, 2004, December 22, 2004, December 29, 2004, January 4, 2005, January 12, 2005, January 19, 2005, January 26, 2005, February 2, 2005, February 9, 2005, February 16, 2005, February 23, 2005, March 9, 2005, March 23, 2005, and March 30, 2005. Each intercept resulted in the discovery of traces of marijuana and/or a white powdery substance that field-tested positive for cocaine, as well as narcotics packaging materials and empty boxes of baking soda, a substance commonly used in the conversion of cocaine hydrochloride into cocaine base.

- On February 22, 2005, employees of the apartment complex entered Apartment 606 to conduct pest control and reported observing marijuana residue and a small

---

[3] At the time this motion was filed, defendants had a pending motion for discovery, in which they sought several categories of documents from the government. Defendants' motion for discovery was granted in part and denied in part on February 16, 2007 (Rec. Doc. 154), and since that time, defendants have submitted no additional evidence supporting their motions to suppress.

scale on the dining room table.

Considering all of these facts in a practical, common-sense manner, the undersigned concludes that probable cause supported the placement of the listening devices in Apartment 606.

**3. Other Possible Investigative Techniques**

Movers also allege that the affidavit lacks sufficient information regarding the other investigative techniques used by law enforcement before the wiretap application was sought. This argument is without merit.

18 U.S.C. §2518 (1)(c) requires that all applications for wiretaps contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. §2518 (1)(c). This requirement has long been referred to as the "necessity" requirement. The Fifth Circuit has held that the proponent of the application need not establish that "every other imaginable mode of investigation would be unsuccessful" before seeking a wiretap. United States v. Guerra-Marez, 928 F.2d 665, 670 (5th Cir. 1991), citing United States v. Diadone, 558 F.2d 775, 778 (5th Cir.1977), *cert. denied,* 434 U.S. 1064, 98 S.Ct. 1239, 55 L.Ed.2d 765 (1978). Rather, courts take a "common sense view" of the statements contained in the application to determine if the necessity requirement is satisfied. Id.

In the instant case, the undersigned concludes that Agent Catalan's affidavit satisfies the necessity requirement. Included in the affidavit are alternative investigative techniques utilized by law enforcement investigating the case, including physical surveillance of Apartment 606; the use of confidential informants and undercover agents; the execution of search warrants; and attempts to trace telephone calls. The undersigned concludes that the inclusion of this information in the affidavit satisfies the necessity requirement.

For the foregoing reasons, it is **RECOMMENDED** that the Motion to Suppress be **DENIED.**

Signed at Lafayette, Louisiana on March 7, 2007.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

COPY SENT:
DATE: 3/7/07
BY: CW
TO: mem
RFD